O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TOMMIE THOMPSON, | ) | CASE NO.  ED CV 14-0080 ODW (RZ) |
| Petitioner, | ) | |
| | ) | ORDER SUMMARILY DISMISSING |
| vs. | ) | HABEAS ACTION |
| | ) | |
| LOUIS MILUSNIC, Warden, | ) | |
| Respondent. | ) | |
| ——————————————— | ) | |

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts – which Rule also applies to this Section 2241 petition, *see* Rule 1(b) – provides that "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."  Because it is clear from the face of the petition in this prison-discipline habeas case that the action lacks merit, the Court will dismiss the action summarily and with prejudice.

## I.
## BACKGROUND

Petitioner Tommie Thompson is a federal prisoner housed at Victorville, in this judicial district.  In 2012 prison disciplinary proceedings based on a urine sample, he

was found guilty of using marijuana. Part of his punishment was the loss of good-time credits towards completion of his sentence. Petitioner challenges the guilty finding here on the following due process grounds:

1.  The "urine sample was collected by an unqualified Correctional Officer." Petitioner bases this supposed lack of qualification, however, solely on his allegation that the officer, one R. Wentz, "refused to provide Petitioner with a verbal acknowledgment of [Wentz's] certification requirements for collecting urine samples." Pet. ¶ 9(a).

2.  The Incident Report inadequately describes the urine sample's chain of custody. For example, Petitioner explains, there was no evidence that the sample was secured at the correct temperature or that it was shipped for testing on the day of its collection, as (Petitioner says) is required by a Bureau of Prisons (BOP) Program Statement section. Pet. ¶ 9(b).

3.  Similarly, the hearing officer's Disciplinary Hearing Officer (DHO) Report lacks evidence that the urine sample was shipped for testing on the day of collection. Pet. ¶ 9(c).

4.  The BOP's failure to respond to Petitioner's final administrative appeal entitles him to relief by default. Pet. ¶ 9(d).

## II.

## DISCUSSION

Prison disciplinary proceedings comport with substantive due process if the resulting findings are supported by "some evidence" in the record, *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985), bearing sufficient "idicia of reliability." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" test is satisfied by "any evidence in the record that could support the conclusion reached by the disciplinary board," even if "no direct evidence" exists; even if the circumstantial evidence is "meager," *Hill*, 472 U.S. at 455-57; and even if the record evidence is in conflict. *In re Powell*, 45 Cal. 3d 894, 906 (1988).

## A.      Claim 1:  Non-Reply By Urine-Collecting Officer About Certification

Even if the Court assumed, solely for the sake of discussion, that a valid habeas challenge could lie where a prisoner's tested urine was collected by an officer who lacked a federal legal qualification for such collection, Petitioner has actually not made such a claim.  He is speculating.  As noted above, he specifically asserts only that R. Wentz did not answer Petitioner's challenge.  That is not evidence that Wentz was in fact not certified.  The first claim is too speculative factually, whether or not the legal ground cited is sound.

## B.      Claims 2 And 3:  Chain Of Custody Challenge

Neither the Ninth Circuit, nor any District Court within it in any published case, appears to have addressed a habeas challenge to chain-of-custody drug-test evidence in prison disciplinary settings.  But other federal courts, including the District of Oregon in unpublished decisions, have consistently rejected such claims, absent any affirmative showing of mishandling.  *See Webb v. Anderson*, 224 F.3d 649 (7th Cir. 1999); *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989) ("A chain of custody requirement would be nothing more or less than an 'independent assessment' into the reliability of the evidence, and *Hill* tells us, explicitly, that such a 'credibility' determination is not required."); *Jackson v. Johnson*, 15 F. Supp. 2d 341 (S.D.N.Y. 1998); *Nelson v. McBride*, 912 F. Supp. 403 (N.D. Ind. 1996); *see also Argento v. Thomas*, No. CV 10-599-AC, 2010 WL 3661998 (D. Or. 2010), at *5-*6; *Snyder v. Thomas*, No. CV 08-960-PK, 2009 WL 1138084 (D. Or. 2009), at *3-*4.  In *Webb*, inmate James Webb lost good-time credits after Indiana prison authorities determined that his urine sample tested positive for marijuana use, as occurred to Petitioner Thompson here.  Similar to Petitioner, Webb challenged the chain of custody evidence, in two respects.  *See* 224 F.3d at 650.  First, neither Webb's toxicology report nor the prison's chain-of-custody form supplied the name of the testing technician.  Second, neither document indicated that Webb's specimen's container had remained sealed until just before testing.  *Id*. at 651.  The Seventh Circuit "regard[ed] the two omissions in the

documentary trail as significant, but not so material as to preclude prison officials from relying on the documents as evidence of Webb's marijuana usage." *Id.* at 652. The *Webb* court explained its reasoning as follows, noting *Superintendent v. Hill*'s deferential standard of review:

> Notwithstanding the omission of the name of the technician who tested Webb's specimen, there is no reason to doubt that the laboratory actually analyzed the sample; the toxicology report lays out the various substances for which Webb's urine was screened and the results for each [substance]. Similarly, although the chain of custody form does not confirm that Webb's specimen reached the technician in a sealed condition, the record gives us no reason to suspect that the specimen may have been opened and tampered with during the twenty-four hour period between its arrival at the hospital on March 12 (at which point we know it was still sealed) and its testing on March 13. The gap in the chain of custody form and the anonymity of the technician who analyzed Webb's sample certainly leave room for the possibility that the sample was mishandled in some way . . . . Yet:
>
>> The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the [prison] disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in disciplinary hearing.
>
> *Hill*, 472 U.S. at 457 . . . . Absent some affirmative indication that a mistake may have been made, [*see*,] *e.g., Meeks* [*v. McBride*], 81 F.3d [717,] 721 [(7th Cir. 1996)] (prisoner number on toxicology report did not match petitioner's number, another prisoner had same name as petitioner, and the two prisoners had been confused [with one another] before), we cannot say that the toxicology report and chain of custody report fail to qualify as "some evidence" from which prison officials could conclude that Webb had used marijuana.

224 F.3d at 652-53 (some citations omitted).

Just so here.  Petitioner cites gaps in the documentation that could have been filled – there was no notation of the sample's storage temperature or of the fact of same-day shipping – but no "affirmative indication" of a mistake.  (He offers no explanation, moreover, of how any possible delay in shipping, or a possibly improper storage temperature, could cause otherwise "clean" urine to test positive for marijuana use.) "Some evidence," albeit with some imperfections in documentation, supports the guilty finding.  Habeas relief is unavailable.

### C.   Claim 4:  Failure To Respond To Final Administrative Appeal

Petitioner asserts that the government "has conceded" his entitlement to relief "through default by [its] non-response to [his] timely filed administrative appeal[.]"  He explains that his BP-11 appeal form  "was received by [BOP's] General Counsel on July 31, 2012," but there has been no response.  The claim not only lacks affirmative legal support but also is barred by the very text of the regulations upon which it relies.  It is true that a federal inmate's submission of a BP-11 form to the General Counsel's office is the fourth and final stage of exhausting a claim administratively.  *See* 28 C.F.R. §§ 542.10-.19 (four-stage process generally), 542.15(b)(1) (final appeal on BP-11 form specifically).)  And it is also true that the pertinent regulations require the General Counsel's office to respond within 40 days, with a possible one-time extension of 20 days.  28 C.F.R. § 542.18.  But the closing words of the same, deadline-setting regulation also plainly state that a non-response is tantamount to a denial of the claim:

> If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.

*Id.* Petitioner thus had a tacit denial (and exhaustion) of his claim over a year and a half ago. The tacit nature of the denial does not somehow operate as a default against the government or otherwise entitle Petitioner to relief.

### III.

### CONCLUSION

For the foregoing reasons, the petition is denied on its merits and the action is DISMISSED WITH PREJUDICE.

DATED:   February 7, 2014

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE